# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. 3512 FOR 2703(d) ORDER FOR ONE E-MAIL ACCOUNT SERVICED BY OATH HOLDINGS, INC.** | ML No. _____19-ML-1291_____ |

*Reference:      DOJ Ref. # CRM-182-68899; Subject Account: Joscampbell631@yahoo.com*

## APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. §§ 2703(d) and 3512(a), and the Treaty Between the Government of the United States of America and the Principality of Liechtenstein on Mutual Legal Assistance in Crimnal Matters, Liech.-U.S., S. TREATY DOC. NO. 107-16 (2002) (hereinafter the "Treaty") to execute a request from the Principality of Liechtenstein ("Liechtenstein").  The proposed Order would require Oath Holdings, Inc. ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Sunnyvale, California, to disclose certain records and other information pertaining to the PROVIDER account associated with **Joscampbell631@yahoo.com**, as set forth in Part I of Attachment A to the proposed Order, within ten days of receipt of the Order.  The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order.  In support of this application, the United States asserts:

## LEGAL BACKGROUND AND JURISDICTION

1.      PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2).

Accordingly, the United States may use a court order issued under § 2703(d) to require

PROVIDER to disclose the items described in Part II of Attachment A.  *See* 18 U.S.C.

§ 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2.　　　Pursuant to the applicable treaty, this Court has jurisdiction to issue the proposed

Order.  *See* Treaty art. 5(1) (authorizing courts to issue orders necessary to execute the request).

In addition, this Court has jurisdiction to issue the proposed Order because it is "a court of

competent jurisdiction," as defined in 18 U.S.C. § 2711.  18 U.S.C. § 2703(d).  Specifically, the

Court "is acting on a request for foreign assistance pursuant to [18 U.S.C.] section 3512."

18 U.S.C. § 2711(3)(A)(iii); *see also* 18 U.S.C. § 3512(a)(2)(B) (court may issue "a warrant or

order for contents of stored wire or electronic communications or for records related thereto, as

provided under section 2703"); 18 U.S.C. § 3512(c)(3) ("application for execution of a request

from a foreign authority under this section may be filed . . . in the District of Columbia").

3.　　　Section 3512 provides:

> Upon application, duly authorized by an appropriate official of the
> Department of Justice, of an attorney for the Government, a Federal
> judge may issue such orders as may be necessary to execute a
> request from a foreign authority for assistance in the investigation
> or prosecution of criminal offenses, or in proceedings related to the
> prosecution of criminal offenses, including proceedings regarding
> forfeiture, sentencing, and restitution.

18 U.S.C. § 3512(a)(1).  This application to execute Liechtenstein's request has been duly

authorized by an appropriate official of the Department of Justice, through the Criminal

Division, Office of International Affairs,[1] which has authorized execution of the request and has

---

[1]  The Attorney General, through regulations and Department of Justice directives, has delegated to the
Office of International Affairs the authority to serve as the "Central Authority" under treaties and
executive agreements between the United States and other countries pertaining to mutual assistance in
criminal matters.  *See* 28 C.F.R. §§ 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and
81C (2018).

delegated the undersigned to file this application.  The undersigned has reviewed the request and

has confirmed that it was submitted by authorities in Liechtenstein in connection with a criminal

investigation and/or prosecution.

4.        A court order under § 2703(d) "shall issue only if the governmental entity offers

specific and articulable facts showing that there are reasonable grounds to believe that . . . the

records or other information sought, are relevant and material to an ongoing criminal

investigation."  18 U.S.C. § 2703(d).  Accordingly, the next section of this application sets forth

specific and articulable facts showing that there are reasonable grounds to believe that the

records and other information described in Part II of Attachment A are relevant and material to

an ongoing criminal investigation.

## **RELEVANT FACTS**

5.        Authorities in Liechtenstein are investigating an unknown suspect(s) for fraud

offenses, which occurred in or around June 2015 to and including April 9, 2019, in violation of

the criminal law of Liechtenstein, specifically, Articles 146, 147, and 148 of the Liechtenstein

Criminal Code.  A copy of the applicable laws is appended to this application.  The United

States, through the Office of International Affairs, received a request from Liechtenstein to

provide the requested records to assist in the criminal investigation and/or prosecution.  Under

the Treaty, the United States is obligated to render assistance in response to the request.

6.        According to authorities in Liechtenstein, the victim is an 85-year-old widow

living alone.  The victim spends several hours daily on "social media platforms" and/or on the

Internet to maintain an active life.  The victim "surfs" on the Internet, writes e-mails, and/or

communicates through the Skype instant messaging service.  With regard to her health, the

victim is severely restricted in her mobility, but is mentally very active and, in the opinion of

Liechtenstein officials, also of sound mind.

7.        Liechtenstein authorities first interviewed the victim on December 18, 2015, regarding a series of overseas financial transactions that the victim's bank had reported as suspicious to the Liechtenstein authorities.  The victim confirmed that she had arranged several transactions in the amount of CHF 29,400 (approximately USD 29,684) by means of Western Union payments on behalf of an individual named Dr. Jeffrey W. Talley, ("Talley") in Nigeria, Ghana, and Great Britain.  The victim conveyed to Liechtenstein authorities that the victim met Talley, a general in the U.S. Army, in June 2015 through an unspecified social media platform. The victim stated at the time of the interview that she expressly did not wish to lodge a criminal complaint.  Liechtenstein authorities urgently requested the victim not to send any more payments to Talley or to Ghana, Nigeria, and Great Britain.  The victim evidently continued to maintain contact with the unknown suspect(s) and subsequently regularly forwarded additional large sums to payment destinations abroad from her private accounts.

8.        From June 2015 to April 3, 2019, the victim frequently corresponded with Talley or Talley's alleged friends through social media, Skype, and e-mail.  Talley succeeded on several occasions in convincing the victim to send large sums abroad.  According to the victim, Talley's alleged friends, U.S. General Joseph Anderson ("Anderson") and U.S. General John F. Campbell ("Campbell") also contacted the victim through the e-mail accounts genjosephanderson86@gmail.com and **joscampbell631@yahoo.com**.  Thereafter, the victim maintained contact through e-mail and Skype with Talley, Anderson, and Campbell.

9.        On or around April 2, 2019, the victim's bank again notified Liechtenstein authorities of suspicious transfers to foreign countries from the victim's bank account.

10.        Liechtenstein authorities interviewed the victim a second time on April 11, 2019.

During this interview the victim provided Liechtenstein authorities with copies of e-mail correspondence and bank transfers from multiple banks.

11.      The victim provided an e-mail dated April 3, 2019 from "Gen Joseph Anderson" with the e-mail genjosephanderson86@gmail.com, where the unknown suspect(s) indicated that Anderson was stationed in Afghanistan, was facing a transfer to Yemen and required a financial payment to pay for jet fuel that would fly "Jeffrey" out of Afghanistan.  The victim did not make this payment, but according to the bank records, the victim made the following financial transfers from her bank accounts to numerous recipients with payment destinations in Nigeria, Great Britain, United States, Amsterdam, Italy and Hamburg:

- From June 23, 2015 to August 14, 2018, the victim transferred the equivalent of USD 52,037 through multiple transfers from her account at LGT Bank AG; and

- From July 21, 2015 to February 4, 2019, the victim transferred the equivalent of USD 130,280 through multiple transfers from other bank accounts.

12.      The victim also sent packages to the unknown suspect(s) with cash, tea, marzipan, and chocolate.

13.      Liechtenstein authorities sent an e-mail to genjosephanderson86@gmail.com on April 9, 2019 and determined that the unknown suspect(s) had opened the e-mail.

14.      Liechtenstein authorities also conducted an open-source internet search of Jeffrey W. Talley, John F. Campbell and Joseph Anderson.  The investigation determined that real U.S. military officers with those names existed and that the unknown suspect(s) had stolen their identities and created fake e-mail accounts in furtherance of the scheme.  For example, other individuals had posted on the Internet numerous "alerts" with regard to "fake profiles" and

"cases of romance scamming" associated with these names.

15.      To further their investigation and help determine the identity of the unknown suspect(s), Liechtenstein authorities seek certain records regarding the e-mail account **joscampbell631@yahoo.com**, which is serviced by PROVIDER.

## REQUEST FOR ORDER

16.      The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.  Specifically, these items will help authorities in Liechtenstein identify and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity. Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order within ten days of receipt of the Order.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

By: _/s/ Jason F. Cunningham_____
Jason F. Cunningham
Trial Attorney
MA Bar Number 673495
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W., Suite 800
Washington, D.C.  20530
(202) 616-3596 telephone
(202) 514-0080 facsimile
Jason.Cunningham@usdoj.gov

## Relevant Provisions of the Liechtenstein Criminal Code

**Art. 146 - Fraud**
Anyone who by deceit about facts induces another person to act, fail to act. or suffer an act and thus causes a pecuniary loss to that person or a third party with the intention of unlawfully enriching himself or a third party as a result of the deceived person's behavior, shall be punished by up to six months of imprisonment or a fine of up to 360 daily rates.

**Art. 147 - Serious Fraud**
1) Any person committing fraud, who for the purpose of deception:

1. uses a false or forged document, false or forged data, another such means of evidence or an incorrect measuring instrument,
2. incorrectly places, moves, removes or defaces a sign intended to indicate the boundary or the water level or
3. impersonates a public official,

   shall be sentenced to a term of imprisonment of up to three years.

2)      Any person who commits fraud which causes a loss in excess of 5,000 Swiss francs shall be liable to the same sentence.

3)      Any person causing a loss in excess of 75,000 Swiss francs through the offence shall be sentenced to a term of imprisonment of between one and ten years.

**Art. 148 - Fraud committed on a professional scale**

Any person who commits fraud on a professional scale shall be liable to a term of imprisonment of between six months and five years; however, any person who commits serious fraud with the intention of securing a continuous income by repeatedly committing such fraud shall be liable to a term of imprisonment of between one and ten years